The next case on the court's docket is People v. Jermell Butler, 524-0494. Are the parties present? Yes? Okay. Mr. Carroll? Yes. To the appellant. Yes. Afternoon, Your Honors. Counsel. My name is Brian Carroll from the State Appellate Defender, representing the appellant, Jermell Butler. Speak up a little bit. Sorry. Brian Carroll from the State Appellate Defender's Office, representing the appellant, Jermell Butler. I will be addressing argument number one today. If you have any questions on the other two arguments, I'll be happy to answer them. Mr. Butler made a sufficient showing by the preponderance of the evidence, both that when faced with one of the most important decisions in his life, whether to accept the State's plea offer or risk it going to trial, his trial counsel misadvised him regarding the dire consequences he faced by rejecting the State's plea offer, and that there is at least a reasonable probability that had he been properly advised, he would have accepted the offer. For these reasons, we ask this Court to reverse the denial of this post-conviction claim. At the evidentiary hearing, Butler testified that his counsel misled him to believe that the maximum sentence he would face by going to trial was 30 years at 50 percent time, which would have been 15 years of time actually served. And that the plea offer was for a 20-year cap at 50 percent time, which would be 10 years of time actually served. So in his mind, the plea offer merely reduced the maximum time he potentially faced by five years. And he determined that based on that, he would risk going to trial. And in reality, he faced a maximum, potential maximum sentence of 60 years at 85 percent time, which is 51 years of time actually served. So the plea offer knocked off 41 years from the maximum time he potentially was looking at, rather than the five years he believed. And we don't have to just rely on Mr. Butler's word because the record backs him up. At awaitment, when he was advised of the counts, the charges he faced, he was just told of the maximum and minimum of each count individually. He was never told of the possibility of consecutive sentences. And most critically, when the plea offer was actually discussed at trial, and he was advised by the court regarding his 50 sentences he faced, again, he was never told of the possibility of consecutive sentences. The court explicitly told him that on counts one and two, that he was looking at a maximum of 30 years. And Butler said that's what he understood. But Butler never piped up and said, well, my counsel told me that I was looking at 60 years. Nor did counsel chime in and try to correct the court's admonishments to Mr. Butler. Thus, the record supports his claim that at the time he rejected the plea, he was under the impression that he was only looking at 30 years of time. Moreover, trial counsel's testimony at the hearing did not rebut Butler's allegations. Counsel testified that she could not recall particularly what she advised Butler. And because she could not recall what she told him, she was not in a position to say that his allegations were not true. The best she could do was testify about her general practice. But the question was not what she did generally, but what she did in this particular case, which she could not testify to because she did not recall what she did in this particular case. And, you know, attorneys are humans. They make mistakes. So the fact that she couldn't recall what she told Butler means that she could not say that she did not make a mistake in this case. Are you saying that an attorney cannot testify to their custom and practice? No, I'm not saying that they cannot. I'm just saying that what their custom, just general testimony about their custom and practice, is not sufficient to overcome allegations of what they did in a particular case, particularly in a case like this where the record backs up the defendant's allegations. Didn't the trial court specifically find the defendant's testimony in that regard was not credible? Well, and that credibility determination was based on the court's personal knowledge of trial counsel's conduct in other cases, which was an improper thing for the court to consider. It was also in light of the defendant's testimony that he did not ask his attorney to try and negotiate a different deal. He maintained throughout that he was innocent. He maintained that he had a positive feeling about going to trial, and the attorney testified that he was never willing to plead to any of the counts and never once entertained any type of prison sentence. Because at the time, that cannot be divorced from his misunderstanding of what time he was looking at. Again, in his mind, the plea offer only was knocking off five years of his potential maximum sentence. And while a 15-year sentence isn't trivial, it's not the effective life sentence he was actually potentially facing. And had he known that he was potentially looking at life in jail for this, that would have dramatically changed his calculus as to whether or not to take the plea. The courts and the legislature fully understand that people who believe they're innocent and are innocent sometimes plead guilty when they decide that it's in their best interest to do so because they believe the cards are stacked against them. So the fact that he pleads guilty, or the fact that he maintains his innocence, does not negate the fact that he may have, there's a reasonable probability that he would have changed his mind about the plea had he known he was looking at an effective life sentence as opposed to a mere 15 years. So, again, the evidence we have of what actually happened in this case was his testimony, specific testimony that he was misadvised, the trial record that supports his allegations, and then the trial counsel's testimony that I don't recall. So the weight of the evidence that's actually presented, the competent evidence that was presented at the hearing weighs in Mr. Butler's favor. And, again, given the drastic difference between the 51 years he was looking at and the 15 years he thought he was looking at, that shows that there is a reasonable probability that he would have changed his mind. If he had just 15 years, he would have had the possibility of a decent life after prison, even if he got the maximum. That's not the case with 51 years. He would be lucky to even survive that. And if he did, he would be in his 90s at the point in which he was looking. So that's what he was looking at. I see I'm running out of time. Then we maintain the evidence here, the weight, the manifest weight of the evidence, his testimony, and the trial record supports his claim. And the drastic difference between what he thought he was facing as opposed to what he was actually facing supports his claim by the ponderance of evidence that his trial counsel was ineffective for failing to properly advise him of the consequences of denying the plea. For those reasons, we ask that this Court reverse the denial of this post-condition claim or provide the alternative relief asked for in the brief. Are there any other questions? Hi. Well, to me, the more troubling part was the third issue that you're not addressing today, but the failure to comply with Rule 651 or possible failure to comply with Rule 651C, the failure to attach a notarized affidavit as required. Do you not see that as strong an issue as the one you just discussed? Well, the one we just discussed, again, must be the biggest barrier. I mean, rolling over on the third issue as well, I think counsel there clearly failed to comply with the process. Because that's the best relief that you're saying? Yes. Okay. Would you like me to address the third issue? That's all right. It's in the brief. I followed that. Okay. All right. Thank you. Thank you, Mr. Carroll. We'll give you a few minutes after the State. Ms. Jones? Good afternoon, Your Honors. My name is Kara Jones, and I'm with the State's Attorney's and Health Prosecutor's Office here on behalf of the State. I want to address very briefly the argument about the fact that the Court's reliance upon the personal knowledge of defense counsel somehow played a part in the Court's determination. It did. And the record specifically refutes that. The trial court said that he evaluated the defendant's credibility based upon his testimony at the hearing and his testimony and attitude at trial in his statement and allocation in determining that the defendant had failed to meet his verdict of proof. Also, with regards to the prejudice fall, with regards to the first issue, the case law is clear that where a claim of ineffective assistance with regards to the rejection of a plea offer, the defendant must show a reasonable probability that but for counsel's deficient advice, he would have accepted the plea offer. And the defendant's own self-serving statements, subjective self-serving testimony, is insufficient. There must be independent objective confirmation that the defendant's rejection of the proper plea was based upon counsel's erroneous advice and not on other considerations. In the brief we've outlined in great detail the objective evidence that shows that his whole focus, his whole goal, and his whole reason for refusing the plea offer was his belief that he was innocent and that the court would not and that the jury would not find him guilty. Those issues are all fully addressed in our brief. So in light of Justice Vaughn's desire to discuss the third issue, I will proceed to do that. And specifically with regards to the Addison issue, the failure of trial counsel or post-conviction counsel to assert in their supplemental petition that there was ineffective assistance of appellate counsel. It's our position that that does not require a name. It is our position that when you look at Addison, the clear focus of Addison was on the fact that the defendant's claim was likely dismissed on procedural grounds. In that case, the parties argued the merits. The court basically said that the record was unclear as to whether the failure to amend the pleading played any role in the dismissal of the plaintiff's claims. But Addison also says you don't really get to the merits. The pleading has to be framed, the issue properly framed, and 651C complied with. You don't really get to the merits of what's being alleged by the defendant. You have to make sure it's in proper form first so it gets remanded back to put it in proper form. And, Your Honor, I would suggest or submit that it was in proper form because the claim of ineffective assistance of appellate counsel first and primarily relies upon a claim of trial counsel error. So if the court can decide and can determine that there was no ineffective assistance of trial counsel, then there is no claim of ineffective assistance of appellate counsel. And I want to address the fact that the defendant in their reply brief argues that the State ignores First of all, they don't dispute the fact that the court in Addison remanded the case because it could not determine if a failure to amend the petition played any role in the trial court's decision to dismiss. It's not true in our case. The procedural, the fact that they didn't assert ineffective assistance of appellate counsel played no role in the trial court's decision on the merits because they did decide it on the merits. But the defendant argues that we have ignored the second reason for Addison. And specifically, they argue that excusing counsel's failure to amend the petition to avoid forfeiture where the circuit court dismissed the claims on their merits would be contrary to the principle holding in Turner, reconfirmed in Suarez, that post-conviction counsel failure to fulfill their duties under Rule 651C requires remand regardless of whether the petition's claims have merit. I would point out that the purpose of 651 and the focus of all of those cases was that the attorney must present the defendant's claims in a sufficient form so that the court not only can but must decide them on their merits instead of on procedural grounds. Where additionally, and when the trial court fails to do so, the purpose of the act is defeated because the substantive points that the defendant is trying to raise with regards to his constitutional violations is not addressed. But when the court, and additionally, when the counsel fails to do so, there's an insufficient record for the appellate court or the Supreme Court to decide on the merits. It's kind of the same principle with Crankle. Why do you have to have a preliminary Crankle hearing? Because this court, and ultimately maybe the Supreme Court, wants to have a record upon which they can determine whether the trial court, abuse of its discretion or the decision was against manifest whatever the evidence, whatever the standard review is, properly decided the issue. As a result, the Tudor court, as did Addison, concluded that failure to amend the post-conviction petition precluded consideration of petitioner's claims on the merits and directly contributed to the dismissal of the petition without an evidentiary hearing. That's not true here. The failure of the post-conviction counsel to raise ineffective assistance of appellate counsel had no bearing on the trial court's decision to dismiss the claim on its merits. In its continued discussion of Turner, the Addison-Poynton court noted that the Turner court decided to the case of Keeple v. Johnson for the proposition that it would not speculate whether the trial court would have dismissed the petition without an evidentiary hearing if counsel had adequately performed his duties. There's no speculation acquired here. The trial court did dismiss the claim based upon its merits, not its procedural bar. The record is clear that the failure to allege ineffective assistance of appellate counsel played no role in the trial court's dismissal at the second stage here. The Addison court continued by citing the Johnson, which was another Supreme Court case. And it cited the Johnson case in detail and extensively in its decision. And they quoted Johnson by stating that the Addison, that it was not expressing an opinion, that the Johnson court was not expressing an opinion on the merit of defendant's post-conviction petition claims or on whether an evidentiary hearing would be appropriate in the case. And the Johnson court concluded that on remand, the trial court will have an opportunity to evaluate the claims in Petitioner's post-conviction petition once Petitioner's counsel has made any amendments to the petition which are necessary for adequate presentation of Petitioner's contentions. Once again, in the case of Barr, the court found that trial counsel had adequately presented the claims because it rendered its decisions on the merits, not on procedural grounds. And although the court, appellate court and Supreme Court, have consistently held that it will not consider the merits of a post-conviction petition claim when it did not comply with Rule 651 to place the petition in the proper form, the court was discussing whether it would review the claim, not whether the trial court was precluded from doing so. And I would also point out that the court's refusal to consider the merits on appeal when the trial court has not is not inconsistent with the conclusion that remand is unnecessary where the trial court considers the issue on the merits and not on procedural grounds. The courts have consistently refused to consider an issue as a matter of first instance. And that rule was expressly pointed out by the Supreme Court in Suarez. In this case, the trial court did determine the claims on its merits, not on the basis of procedural error, and counsel's failure to assert an effective assistance of appellate counsel, you know, did not affect those merits. I'd also point out, and although it's only persuasive authority, not binding authority on this court, but this court, and a different panel, of course, of this court, already ruled in Warrensley that the failure of counsel to raise an ineffective assistance of appellate counsel is irrelevant where the trial court actually determined the case on its merits. In fact, it would be futile because the court has already ruled on the merits. Remand is futile because the trial court has already ruled on the merits and ruled that they, so unlike Addison, Turner, and Johnson, the trial court did not dismiss the claims on procedural grounds. It had the opportunity to do so, but chose not to do so and said, rule on the merits. So, I would submit, I'd also point out, Your Honors, that the Taylor case that they cite in their reply brief also cites to another panel district, or panel of the first district, where the court ruled the same way as Warrensley. Any further questions, Justice Fong? Thank you, Your Honors. Thank you. Mr. Carroll? Mr. Bell? Your Honors, I guess the state just has a different idea of what... I didn't hear what you said. I guess the state has a different idea of what no harms here analysis means. I mean, I believe Addison Weir got it correct Addison, Turner, McGee, Suarez, the Illinois Supreme Court has been pretty clear that failure to comply with Rule 651C requires automatic reversal, full stop. In this case, it's not a situation where counsel just failed to properly amend one of the pro se raised claims in order to make a meritless amendment to a pro se raised claim to try to get over a procedural bar. Counsel raised this claim by themselves. McGee made clear that counsel has a duty when they add claims, that those claims have to be adequately presented. So I guess the state's argument is that counsel here purposely and knowingly raised a frivolous claim in the amended petition because, according to the state, while the ineffective appellate counsel would never fly and therefore the underlying claim would fly. Well, if this issue is necessarily frivolous and counsel knew that, counsel had a duty under Rule 651C not to raise it. Like he did, or she did raise it. I don't know who did it. But, so, here we have a situation where counsel went out of their way to raise an issue and they did it in a way that is necessarily legally insufficient. And by not presenting it in a way that would allow it to be even theoretically viable before the court, this counsel failed to, under their duties under Rule 651C. And I know in our reply brief that counsel did, in Anderson, yes, they made reference to it not being clear in that case whether the issue in question was dismissed on the merits or due to procedural default. But as we maintain in our reply brief, the fact that Suarez requires reversal regardless of the merits of the issue was the independent reason for reversal in that case. And that controls here. So, again, we have a case where the Supreme Court rule required counsel to raise this issue in a proper way before the court. Counsel failed to do so. Therefore, counsel failed to comply with the Supreme Court rule. And under Suarez, that requires reversal regardless of the merits. And we can't, and it's not just that, well, it would be a pointless remand. Well, we don't know if it's a pointless remand because he was never given reasonable counsel to represent him. We don't know what would happen if he had reasonable counsel. That's the problem. That's why a harmless error analysis doesn't apply in those cases. So, again, we maintain that under, because the record definitively shows that counsel did not comply with Rule 651C, that the case, assuming this Court doesn't apply, give relief on the first issue, that this case must be remanded for new second stage proceedings under Suarez, Turner, Addison, et cetera. Unless this Court has any additional questions? MS. JONES. Okay. Thank you, Mr. Carroll. Thank you, Ms. Jones. That will conclude the arguments on this case. The matter will be taken under advisement. We'll issue an order in due course. Thank you both for your arguments here today. Have a good afternoon.